IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY J. RYBECK,

          Plaintiff,

v.                                           Case No. 13-4048-SAC

CAROLYN W. COLVIN,
Commissioner of Social Security,

          Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security which denied plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General Legal Standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence in the record as a whole, and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). When supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). But the standard "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Trimmer v. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

The claimant shall be determined to be under a disability only if he can establish that he has a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents him from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

## II. Procedural History

Plaintiff, when less than 30 years old, filed applications for disability insurance benefits and SSI alleging disability due to back pain. At step one,

the administrative law judge (ALJ) found that plaintiff had not engaged in substantial gainful activity since March 7, 2010, the alleged onset date. The ALJ found at step two that the plaintiff has a severe impairment of degenerative disc disease with chronic low back pain, but found at step three that that impairment did not meet or equal the severity of a listed impairment.

Accordingly, the ALJ determined plaintiff's residual functional capacity (RFC) as follows:

> After careful consideration of the entire record the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) in that the claimant can frequently lift less 10 pounds, occasional lift 10 pounds and seldom, which means 1%-10% of a workday, lift 20 pounds, sit 4 hours in an 8 hour workday, stand or walk 4 hours in an 8 hour workday, with alternating sitting and standing or walking, every 30 minutes. He can seldom use the right leg for operating leg controls, including pushing and/or pulling, but can occasionally use the left leg or both legs. The claimant requires the need to occasionally elevate the right leg and seldom elevate the left leg. He is able to continually use his hands for simple grasping, handling (gross manipulation), feeling (fine manipulation) and feeling (skin receptors), except he can use his hands for no more than frequent pushing and/or pulling and reaching all directions (including overhead). The claimant is able to occasionally bend, balance, crouch, reach overhead and extend arms out, but seldom climb, kneel, crawl and squat. He must avoid concentrated exposure to temperature extremes and pulmonary irritants and must avoid all exposure to unprotected heights and moving machinery.

Tr. 29. The ALJ found Plaintiff unable to perform past relevant work, but able to perform other jobs existing in significant numbers in the national economy, such as arcade attendant, parking lot attendant, and video clerk. Accordingly, the ALJ determined Plaintiff is not disabled.

## III. Issues

### A. Step Three Analysis

Plaintiff first contends that the ALJ erred in not finding that his impairments medically equal the severity of a listed impairment. The ALJ found that Plaintiff had "a severe impairment of degenerative disc disease with chronic low back pain," but failed to show the other necessary criteria to meet the relevant listing, § 1.04. Tr. 29.

To meet this listing, Plaintiff must show that his disc disease results in "compromise of a nerve root . . . or the spinal cord." 20 C.F.R pt. 404, subpt. P, app. 1, § 1.04. He must then show evidence of each of the following: nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A (emphasis added).

Plaintiff has the burden of showing that his impairments meet all of the specified medical criteria contained in a particular listing. *See Candelario v. Barnhart*, 166 Fed. Appx. 379, 382-83 (10th Cir. 2006). The standards for listed impairments were intentionally set high because they operate to cut off further inquiry relatively early in the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

To show compromise of a nerve root or of his spinal cord, Plaintiff cites an MRI which shows moderate narrowing of the spinal canal and the nerve foramina at one vertebral level. The MRI report does not, however, reflect that Plaintiff's spinal cord or nerve root was compromised. *See* Tr. 321, 348-49. Nonetheless, some doctors opined that Plaintiff's complaints could have been caused by herniation at L4-5, the site of a previous surgery. The Court therefore assumes, without deciding, that this foundational requirement is met.

To meet the remaining multiple requirements for this listing, Plaintiff cites medical records noting some loss of sensation and strength. But those records fail to meet Plaintiff's burden. *See e.g.*, Tr. 334 (medical record from March 2010 showing Plaintiff had normal muscle strength, normal tone, normal gait, and normal reflexes); Tr. 375 (September 2010 examination by Frederick Smith, D.O., noting Plaintiff was in no distress, was relatively pain free with normal range of motion, and had normal straight leg raising test); Tr. 30, 353-54, 396 (treatment notes from treating physician Ferrill Conant, M.D., showing Plaintiff had normal strength, normal reflexes, and negative straight leg raising test).

Plaintiff has failed to show evidence that he suffered "motor loss accompanied by sensory or reflex loss" and a positive straight-leg raising test, both of which are required to meet this listing. Accordingly, the ALJ's

finding that Plaintiff failed to meet his burden to show that his impairment met a listing is supported by substantial evidence.

### B. RFC

Plaintiff next contends that the ALJ erred in assessing his residual functional capacity. The ALJ gave significant weight to Dr. Smith's opinion and controlling weight to Dr. Conant's opinion, yet allegedly failed to take into account the particular functional limitations stated by those treating physicians. Plaintiff argues that these physicians found that Plaintiff can sit only 4 of 8 hours and stand or walk 4 of 8 hours and must alternate between sitting and standing or walking every 30 minutes. But the ALJ's RFC adopts the same limitations found in the medical source statements from Doctors Smith and Conant. Tr. 29, 62-63, 375, 406-08.

Plaintiff also contends that Plaintiff's frequent fatigue and continual pain, noted by Doctors Smith and Conant, are unaccounted for in the RFC. *See* Tr. 408, 410. But an ALJ is not required to include a claimant's diagnoses in the RFC, and the ALJ properly included the functional limitations resulting from Plaintiff's impairments. *See* Social Security Ruling (SSR) 96–8p. And the ALJ included "subjective symptoms of frequent fatigue and continual pain" in his hypothetical question to the VE. Tr. 63-64. Further, the ALJ found that Plaintiff's treatment was "generally effective in controlling his symptoms," and explained the basis in the record for that conclusion. Tr. 31-32. The ALJ examined Plaintiff's subjective complaints in

6

detail, and stated the basis in the record for finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his back pain were not fully credible. Tr. 32-33.

Plaintiff also points to Dr. Smith's opinion that Plaintiff is disabled, and to the ALJ's statement that he gave Dr. Smith's opinion significant weight. But the question of disability is an issue reserved to the Commissioner, *see Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (1994), so Dr. Smith's conclusion is not entitled to controlling weight, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96–5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

### C. Credibility

Plaintiff raises a number of issues related to the ALJ's assessment of credibility. First, Plaintiff notes that "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain" or is capable of engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). But the ALJ need not ignore evidence of the claimant's ability to engage in activities of daily living. "Although minimal ADLs alone do not constitute 'substantial evidence that a claimant does not suffer disabling pain,' an ALJ may consider ADLs as part of his evaluation of a claimant's credibility. *Hamlin v. Barnhart*, 365 F.3d 1208,

1220–21 (10th Cir. 2004) (quotation marks omitted)." *Zaricor-Ritchie v. Astrue,* 452 Fed.Appx. 817 (10th Cir. 2011). The ALJ properly did so here.

Plaintiff next alleges that the ALJ erred in relying on isolated medical records reflecting normalcy while ignoring contrary medical records. "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004). Plaintiff specifies that the ALJ relied on Dr. Conant's finding on 11/10/11 that Plaintiff had normal muscle tone, strength, gait and reflexes, but did not note treating physician Smith's notations, such as Plaintiff's "vibration" in his thighs, limited bending, lack of reflexes in his ankles, insomnia and hyperglycemia.

But the ALJ gave Dr. Smith's opinion significant weight even if she did not repeat every finding in his medical notes, and Plaintiff has not shown the significance of the vibration and other findings noted by Dr. Smith. The findings that the ALJ did not discuss consist of only mild impairments or limitations, and nothing in Dr. Smith's report suggests any greater limitations than the ALJ accounted for in her RFC findings.[1] No error has thus been shown. *See Shockley v. Colvin,* __ Fed.Appx. __, 2014 WL 1677981 at 3 (10th Cir. 2014).

Next, Plaintiff challenges the ALJ's finding that "the claimant has failed to follow-up on recommendations, which suggests that the symptoms may

---

[1] The parties agree that Dr. Smith's finding that Plaintiff was limited in his ability to hear and speak, Tr. 408, is in error.

not have been as serious as has been alleged." Noncompliance with an effective remedial measure is generally a valid factor to consider. *See Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004). But Plaintiff contends he was unable to afford the recommended treatment, and "inability to pay may provide a justification for a claimant's failure to seek treatment, *see Thompson v. Sullivan,* 987 F.2d 1482, 1489–90 (10th Cir. 1993)." *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003).

The sole testimony from Plaintiff regarding this issue was specific - that he did not currently have the financial ability to pay for a spinal fusion of L4-L5. Tr.58. And the ALJ did not rely on Plaintiff's failure to seek spinal fusion surgery in finding that Plaintiff had failed to follow-up on doctor's recommendations.[2] Instead, the ALJ noted that in September of 2010, Dr. Smith considered Plaintiff's "treatment options [to be] quite limited due to the claimant being without insurance". Tr. 31. In December of 2010, "the claimant told Dr. Frederick Smith that he had acquired Medicaid and was able to start more definitive treatment." Tr. 31, 387. So Dr. Smith prescribed lumbosacral orthosis and decompression therapy, and indicated that if those treatments could not be done closer to Plaintiff's home, then he would need to get into physical therapy, as well as pelvic traction. *Id.* But Dr. Smith's notes from Plaintiff's office visits in January and February of 2011 reflect that "the claimant had not yet tried physical therapy with pelvic

---

[2] Dr. Smith noted in November of 2011 that Plaintiff "is not interested in more surgery." Tr. 410. Plaintiff had a microdiscectomy at L4-L5 in May of 2008.

traction," even though he had insurance by then. Tr. 31, 383, 393. Plaintiff does not contend that Medicaid would not pay for this latter treatment.[3]

The ALJ's finding does not offend Soc. Sec. Rul. 82–59 (stating when inability to afford treatment provides justifiable cause for failing to comply with prescribed treatment). To the extent the ALJ had the burden to establish noncompliance with an effective remedial measure by substantial evidence, she met that burden, although the weight of Plaintiff's noncompliance seems minimal in this overall disability determination.

Plaintiff also contends that the ALJ improperly discounted his wife's written statement about the extent of Plaintiff's limitations because she was not a medical source and did not observe the claimant in a professional capacity. But the record shows that the ALJ considered the wife's statement for the purpose of providing information about his activities of daily living, *see* 20 C.F.R. § 404.1513(d) (2013), yet rejected it as unconvincing because "the medical evidence [did] not support the limitations claimed" by Plaintiff and echoed by his wife. Tr. 33. The ALJ specifically found the wife's statements to be "of little if any value in determining the extent to which the claimant's limited daily activities are a result of their medical impairments." Tr. 33. This statement reflects lack of medical causation but does not mean the ALJ improperly required Plaintiff's wife to be a medical source before considering her testimony.

---

[3] Dr. Smith noted in Sept. of 2011 that Medicaid would not pay for spinal decompression therapy. Tr. 403.

Lastly, Plaintiff alleges that the ALJ failed to follow the Commissioner's guidelines (SSR 96-7p and 20 C.F.R. § 404.1529(c)(3)) for assessing his pain and other symptoms. Beyond citing these guidelines, Plaintiff fails to develop this conclusory argument in any manner. Assuming that Plaintiff sufficiently preserved this issue, the Court finds that the ALJ properly followed the law. *See* Tr. 29 (stating these regulations), Tr. 29–33 (applying the factors stated in the regulations). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to that evidence." *Adams ex rel. D.J.W. v. Astrue,* 659 F.3d 1297, 1302 (10th Cir. 2011) (alteration and internal quotation marks omitted). Such is the case here.

### D. Step Five

Plaintiff challenges the ALJ's conclusion, based on the vocation expert's (VE) testimony, that Plaintiff was able to perform jobs existing in sufficient numbers in the national economy. At step five the ALJ has the burden to show there are other jobs a claimant can adjust to that exist in significant numbers in the national economy. *See Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998).

**Hypothetical/Limitations**

First, Plaintiff contends that his RFC precludes both sedentary and light work as defined by the Commissioner, and that the hypothetical questions to the VE failed to incorporate all of Plaintiff's RFC limitations. Unless the hypothetical question to the VE sets out "with precision all of a claimant's impairments," the testimony of the VE "cannot constitute substantial evidence" to support the Commissioner's decision. *Hargis v. Sullivan*, 945 F.2d 1482, 1491-92 (10th Cir. 1991); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995).

At the hearing, the ALJ asked two hypothetical questions. First, whether Plaintiff could work if he were limited to a reduced range of "light" work. Tr. 60-61. The VE testified that such a person could perform the jobs of arcade assembler, parking lot attendant, and video clerk, each of which were "light" jobs. Tr. 61. The VE stated that for the job of an arcade assembler there were 575 jobs in Kansas and 129,725 nationally, and for the parking lot position there were 430 in Kansas and 42,500 nationally. The VE added that "the DOT does not deal with the sitting, walking, four of eight and six of eight, and that's based on my experience of placing individuals in the jobs that I testified to." Tr. 61-62. The following colloquy then occurred:

ALJ: And is there any reduction to the unskilled job basis in the [INAUDIBLE] –

> VE: At the light there would be approximately a 70 percent reduction.
>
> ALJ: And is that because of the reduced stand and walk?
>
> VE: Yes, your honor.
>
> ALJ: And then is there any reduction to the sedentary unskilled base?
>
> VE: No, your honor.

Tr. 62.

Next, the ALJ asked the VE whether a claimant could work if he had the limitations stated on Dr. Smith's medical source statement form except for the hearing/speaking restrictions. Tr. 29, 62-63, 406-08. These are substantially the same as the RFC reflected in the ALJ's decision. The VE replied that such a person could do the arcade assembler and parking lot positions. Tr. 64.

Plaintiff contends the ALJ unfairly told the VE he could perform "sedentary" or "light" work when his residual functional capacity does not precisely match either definition. Tr. 60. Plaintiff states that light work, by definition, requires that an individual be able to stand/walk 6 hours of an 8 hour workday. But the ALJ did not use the terms "sedentary" or "light" work in framing her key second hypothetical question. Instead, the ALJ instead accurately summarized Plaintiff's complete RFC. Tr. 63-64, 406-08. The VE responded to that second question by stating that the previously-named jobs were still available. Tr. 64.

The VE acknowledged, however, that the named jobs were "light" jobs as described by the Dictionary of Occupational Titles (DOT). Before an ALJ may rely on evidence from a VE to support a finding of nondisability at step five, he "must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point." *Haddock v. Apfel,* 196 F.3d 1084, 1087 (10th Cir. 1999). See Social Security Ruling 00–4p (SSR 00–4p), 2000 WL 1898704 at 4 (stating that when a VE provides evidence about the requirements of a job or occupation, the ALJ has "an affirmative responsibility" to ask about any possible conflict between the expert's testimony and the DOT, and if the VE's testimony "appears to conflict with the DOT," to "obtain a reasonable explanation for the apparent conflict.").

Here, the VE stated that the DOT does not delineate or expressly address all of Plaintiff's limitations. He explained that as a practical matter the arcade assembler and parking lot positions involved little lifting, permitted a person to sit or stand at will, required walking only within the job station, and permitted one to elevate his leg occasionally. Tr. 64. He also explained that his testimony was based on his individual experience in placing individuals in similar jobs in the regional and national economy. Tr. 62, 65, 66. To that extent, the ALJ satisfied his obligation to obtain a reasonable explanation for any variance between the VE's testimony and the

14

DOT job descriptions. *See Holcom v. Barnhart*, 79 Fed.Appx. 397 at 2 (10th Cir. 2003).

### Number of Jobs

Secondly, Plaintiff correctly notes that the VE did not testify to the number of jobs available in response to the second key hypothetical question which stated Plaintiff's RFC. The VE responded to that second question by stating that the previously-named jobs were still available, and the ALJ reasonably assumed that the same number of jobs was available to the Plaintiff. Tr. 64. In response to the first hypothetical question, the VE testified that there were more than 575 arcade jobs and more than 430 parking lot jobs in the regional economy (Tr. 61). Plaintiff does not dispute that this total of 1005 jobs is a "significant" number. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (rejecting bright line rule establishing the number necessary to constitute a "significant" number of jobs, but finding 650-900 sufficient).

But the VE testified that a 70% reduction was necessary to account for Plaintiff's limitations. The parties dispute whether the 1005 total has yet to be reduced by 70%, or has already been reduced by 70%, tacitly agreeing that 30% of 1005 would not be a significant number, as is required. Defendant interprets the VE's testimony above that, "[a]t the light *there would be* approximately a 70 percent reduction," to mean that the VE had

15

already reduced the number of available jobs by 70 percent. And the ALJ evidently interpreted the testimony in that manner.

But subsequent testimony by the VE muddies the record, making it unclear whether the numbers stated by the VE were before or after the 70% reduction which the VE testified was necessary to account for Plaintiff's limitations. The VE testified as follows when questioned by Plaintiff's attorney on a related matter:

> Attorney: … I always thought that … sedentary work required – usually required six hours of sitting and light work usually required six hours of standing or walking. Does that not?
>
> VE: Right and I explained that deviation.
>
> Attorney: Okay.
>
> VE: And I explained that deviation on those particular jobs. *I was not asked if the reduction of the occupational base applies.*
>
> Attorney: Oh, I'm sorry.
>
> VE: That's a reduction of the occupational base.

Tr. 67-68 (emphasis added).

The VE's testimony on this issue, when viewed in light of the other testimony of record, is ambiguous. The record is unclear as to whether 1005 jobs were available to a person with Plaintiff's RFC, or whether only 301 of those jobs (30% of 1005) were available. Accordingly, the ALJ's interpretation of the VE's testimony to mean that 1005 jobs remained

16

available in Kansas for one with Plaintiff's RFC was not reasonable. Given the lack of precision in the record as to the number of jobs available to this Plaintiff, the ALJ has failed to show substantial evidence supporting her decision that Plaintiff was able to perform other jobs existing in significant numbers in the national economy. This issue should be clarified on remand.

IT IS THEREFORE ORDERED that the decision of the Commissioner is reversed and the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this  26th  day of August, 2014, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge